*775 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Welcome USA Inmigration Services Providers, Inc. (apelante), y nos solicita que revisemos una Sentencia de 20 de noviembre de 2008, notificada el 12 de diciembre de 2008, que emitió la Hon. Yazmín Nadal Arroyo, Jueza del Tribunal de Primera Instancia, Sala de Bayamón (TPI). El referido dictamen atendió la reclamación que presentó Liz Evelyn Vargas Santiago (apelada), quien laboraba para la apelante. Tras su despido, la apelada presentó una demanda contra su antiguo patrono (la apelante). En términos generales, incluyó las siguientes reclamaciones en su demanda: despido injustificado y solicitud de pago de mesada al amparo de la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976 (Ley de Despido Injustificado); discrimen por no habérsele reservado su empleo y reinstalado una vez regresó de su período de maternidad, esto, al amparo de la Ley para la Protección de Madres Obreras, Ley Núm. 3 de 13 de marzo de 1942, según enmendada (Ley de Madres Obreras); despido en represalia por haber iniciado contra su patrono una querella en reclamo de pago de vacaciones ante el Departamento del Trabajo, al amparo de la Ley de Represalias Contra Empleados, Ley Núm. 115 de 20 de diciembre de 1991 (Ley de Represalias); y finalmente, el pago de vacaciones conforme a la Ley de Salario Mínimo y Licencia por Enfermedad, Ley Núm. 180 de 27 *776 de julio de 1998 (Ley de Salario Mínimo).
Luego de examinar la prueba que se presentó durante el juicio, el TPI determinó que la apelada no era una empleada exenta para efectos de la Ley de Salario Mínimo, por lo cual tenía derecho al pago de vacaciones acumuladas. Dispuso que la apelante tenía que pagarle a la apelada $2,520 por vacaciones acumuladas y no pagadas. Se basó para este cómputo en la determinación que había emitido el Departamento del Trabajo como resultado de la querella que instó la apelada contra la apelante.
También, estimó probado que la razón del despido fue el resultado de la querella que presentó la apelada en el Departamento del Trabajo, además, el hecho de que estuvo embarazada. Amparándose en la Ley de Represalias y la Ley de Madres Obreras, el TPI determinó que la apelante debía compensar a la apelada con $13,024 por sus daños emocionales, angustias mentales y pérdida de ingresos. La partida incluye el cómputo de la doble penalidad impuesta por ley.
Además, el TPI detalló la prueba que se presentó a favor y en contra de la contención de la apelante, respecto a la alegada causa del despido. Esta alegó que el despido se debió a que la apelada cobró a un cliente y utilizó un recibo que no era de las libretas oficiales de recibos de la empresa. De su examen de la prueba, el TPI no quedó convencido de la justificación ofrecida y determinó que el despido fue injustificado. Conforme a las disposiciones de la Ley de Despido Injustificado, fijó el pago de una mesada ascendente a $2,233. Finalmente, el TPI aclaró que las partidas calculadas a favor de la apelada ascendían a $17,777. También, concluyó que tenía derecho a la restitución inmediata de su trabajo. Además, dispuso que la apelante debía pagar $1,818.25 en concepto de honorarios de abogado. Dicha partida correspondía al 25% de la partida de vacaciones no pagadas y de la mesada. Inconforme con el dictamen, la apelante acudió ante nosotros y señaló que el TPI erró: (1) al resolver que la apelada no era asistente administrativo, y en ese entendido, reconocerle el derecho a pago de salarios por concepto de vacaciones; (2) al indicar que se despidió injustificadamente a la apelada; (3) al establecer que el despido fue en represalia por la apelada haber presentado una reclamación de salarios ante el Departamento del Trabajo; (4) al determinar que el despido violó las disposiciones de la legislación protectora de madres obreras; (5) que erró en su apreciación de la prueba, más, otorgó cantidades exageradas por concepto de daños y perjuicios; y (6) al haber provisto para el pago de mesada además de haber dispuesto para la compensación de daños y perjuicios bajo la legislación protectora de madres obreras y la ley anti represalias.
Con el beneficio de la comparencia de la apelada y luego de examinar la transcripción de la prueba oral, resolvemos. Adelantamos que modificamos el dictamen apelado.
I
Esbozamos a continuación una breve relación de los hechos e incidencias procesales más relevantes para la resolución del caso. Nos limitamos a destacar la parte de la prueba que se presentó ante el TPI, que aquilató dicho foro, y que se relaciona en mayor medida a los errores señalados. Seguido, detallamos la determinación que emitió el TPI en relación a los cuestionamientos planteados por la apelante, más emitimos nuestra opinión con los fundamentos en derecho aplicables.
A
La apelante es una compañía que se dedica principalmente a llenar documentos y formularios que tramitan los inmigrantes que solicitan sus servicios para presentarlos a las agencias correspondientes. Como parte de sus funciones, hacen traducciones, facilitan la tramitación de visas, además llenan planillas de income tax y para el seguro social. [1] Al frente de sus operaciones, está la Sra. Lilliam Álvarez Moore (Álvarez Moore), quien originalmente fue incluida como demandada en su capacidad personal junto con la apelante.
Según Álvarez Moore, conoció a la apelada mientras esta última le ofrecía sus servicios como mesera en Pizzeria Uno. Álvarez Moore le ofreció empleo a la apelada y la contrató posteriormente. La apelada comenzó a *777 laborar para la apelante (y Álvarez Moore) en febrero de 2001. Durante el juicio, Álvarez Moore declaró que contrató a la apelada como asistente administrativo para una de sus oficinas. Indicó que la apelada tenía libertad en la toma de decisiones de la empresa, abrir y cerrar la oficina, más atender a los clientes. [2]
En el contrainterrogatorio, Álvarez Moore comentó inicialmente que la apelada fungía como supervisora; que la empresa tenía un orden jerárquico; que en dicho orden, estaba Álvarez Moore a la cabeza, y bajo ella, otra empleada y la apelada a cargo de la supervisión de una y otra de las oficinas que operaba la apelante (una en Santurce y otra en el área de San Patricio). Ahora bien, se le confrontó con las declaraciones que vertió bajo juramento durante una toma de deposición y en la contestación a interrogatorio que cursó durante el descubrimiento de prueba, e incluso, se trajo a colación la información que ofreció al investigador del Departamento del Trabajo que la entrevistó por razón de una querella que presentó la apelada en su contra. En resumen, Álvarez Moore reconoció que en las referidas instancias calificó la posición de la apelada como oficinista; que no había un orden jerárquico en la empresa; que todos sus empleados llevaban a cabo las mismas labores, esto es, que todos podían opinar, más supervisar y corregirse entre sí. [3]
Por su parte, la apelada declaró que sus labores se reducían a contestar el teléfono, atender a los clientes y cobrarle por los servicios ofrecidos, llenar formularios, archivar expedientes, también abrir y cerrar la oficina. Sobre esto último se aclaró que la función de abrir y cerrar la oficina no era exclusiva de ella y de Álvarez Moore, más bien, que otros empleados también tenían llaves de las oficinas. Surgió durante el juicio que la dinámica en la empresa apelante era que el que llegara primero abría la oficina y el último que saliera la cerraba. Así lo expresó la apelada, y además, la Leda. Blanca Ramos quien también laboró para la apelante y Álvarez Moore para el mismo tiempo en que la apelada trabajaba. El TPI destacó lo anterior en el dictamen apelado y logramos corroborarlo en la trascripción de la prueba. [4]
A base de estos testimonios, el TPI concluyó que la apelada llevaba a cabo funciones estrictamente de oficina y no ejercía discreción o juicio independiente en la dirección de la empresa. No surgió que realizara trabajo técnico que requiriera conocimiento especializado o que fuera exclusivo de la posición que ocupaba. Tampoco, dispuso el TPI, se probó que llevara a cabo labores de supervisión de manera exclusiva junto con Álvarez Moore.
Estamos de acuerdo con la determinación del TPI en cuanto a este particular. Precisa concluir que la apelada no reúne los requisitos para ser considerada administrador para efectos de la Ley de Salario Mínimo, supra. Presentamos a continuación los fundamentos para esta determinación.
El Artículo 6 de la Ley de Salario Mínimo, supra, 29 L.P.R.A. §250d, dispone que todos los trabajadores de Puerto Rico acumularán vacaciones, con excepción de los enumerados en determinados artículos de esta legislación. Este artículo detalla la forma en que se acumularán, disfrutarán o pagarán las vacaciones o licencia por enfermedad. Por su parte, el Artículo 8 de esta ley detalla qué personas quedan excluidas de la aplicación de esta legislación.
En particular, en el inciso (b) del Artículo 8 de esta ley, 29 L.P.R.A. §250f(b), se establece que las disposiciones de esta ley no serán aplicables a los administradores, ejecutivos y profesionales, según dichos términos son definidos mediante el Reglamento Número 13 de la Junta de Salario Mínimo, Reglamento Núm. 4267 de 29 de junio de 1990 del Departamento del Trabajo y Recursos Humanos. En relación a lo anterior, en Malavé v. Oriental, 167 D.P.R. 594, 600-601 (2006), se destacó que el Art. Ill del referido Reglamento Número 13, hoy derogado, definía el término administrador como:
“Cualquier empleado que reúna los siguientes requisitos:
(a) que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el *778 trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y
(b) que usual y regularmente ejerza discreción y juicio independiente; y
(c) 1. que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de “administrador” o de “ejecutivo”, según estos términos se definen en el presente reglamento; o
2. que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o
3. que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y
(d) que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40%, de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en los incisos (a), (b) y (c) de este Artículo III; y
(e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.
(f) También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios.” Id., 601-602.
En el citado caso se indicó, además, que para poder determinar que un empleado es administrador, es necesario que se acredite que éste realiza trabajo de una importancia sustancial para la dirección del negocio. Se ha resuelto que la discreción y juicio independiente a la que sé refiere el referido Reglamento Núm. 13 debe ser real y sustancial sobre asuntos de consecuencia. Id., pág. 602.
Al evaluar el expediente de este caso, tenemos que concluir, como lo hizo el TPI, que la apelada no puede ser considerada como un administrador. El trabajo realizado por la apelada no era uno de importancia sustancial para la dirección de la apelante. Sus funciones no requerían un ejercicio de discreción o juicio independiente real y sustancial sobre asuntos de consecuencia para la apelante. Se limitaba a atender llamadas, atender clientes, llenar formularios, en fin, a llevar a cabo las funciones que realizaban el resto de sus compañeros que trabajaban para la apelante, y por consiguiente, para Álvarez Moore.
La apelada no cumple con todos los requisitos esbozados por la ley y la jurisprudencia para poder entender que un empleado es un administrador. Ello surge principalmente de las declaraciones de Álvarez Moore. Actuó correctamente el TPI al determinar que la apelada no era una administradora dentro de la empresa apelante, más aún, al concluir que era acreedora de los derechos establecidos por la Ley de Salario Mínimo.
B
La apelada quedó embarazada mientras laboraba para la empresa apelante. Así se lo informó a Álvarez Moore. Esta última declaró también sobre el particular, esto es, que conocía del embarazo de la apelada. La apelada declaró que, ante la noticia, la reacción de Álvarez Moore fue de disgusto, particularmente, por estimar que la apelada comenzaría a ausentarse. [5] Según indicó, Álvarez Moore le cuestionaba porqué tenía que ir todos los meses a visitar al médico. Le insistía en que fuera en su hora de almuerzo o los sábados. Además de lo anterior, la apelada expresó que Álvarez Moore le indicaba, entre otras cosas, que no contestara el teléfono *779 porque tenía voz de desgano, más, se quejaba porque la apelada iba mucho al baño y comía mucho (en referencia a las meriendas que ingería la apelada).
También, surgió que Álvarez Moore le pagaba el estacionamiento a la apelada, y en una ocasión, se molestó con ésta y la amenazó con quitarle la tarjeta. La apelada comentó que Álvarez Moore le dijo que caminara entonces hasta la oficina. A lo cual, la apelada le indicó que se le iba a hacer difícil “con la barriga”. Para ese tiempo, según explicó la apelada, trabajaba en la oficina de San Patricio. Añadió que se estaba poniendo en vigor los sistemas de estacionamiento en el área, y que no se permitía estacionar en los alrededores de las oficinas. [6]
Posteriormente, la apelada le comentó a Álvarez Moore que le interesaba saber si cuando tomara la licencia por maternidad, podía agregarle el tiempo que tuviera acumulado de vacaciones. En la alternativa, sugirió si podía pagarle el tiempo acumulado, ya que aquélla correría sola con sus gastos de parto y maternidad. Según declaró, Álvarez Moore le contestó que no tenía vacaciones, que no le iba a hacer pago alguno. Ante esa situación, en febrero de 2003, la apelada acudió al Departamento del Trabajo para presentar una querella contra la apelante y Álvarez Moore. Ante dicho foro, reclamó el pago de vacaciones acumuladas. [7]
Presentada la querella, un investigador del Departamento del Trabajo acudía a la oficina en que laboraba la apelada. Esta última comentó que los días que acudía el investigador, el resto del día se tomaba en un infierno. Declaró que Álvarez Moore le expresaba que no debía pelear con la mano que le daba de comer; que con la presentación de la querella la única que iba a perder era la apelada; y le insistía en que desistiera de la querella. [8]
Por otro lado, según estipularon las partes, la apelada comenzó su período de maternidad el 19 de mayo de 2003. [9] De acuerdo a la prueba, ésta disfrutaría su licencia a partir del 20 de mayo de 2003 hasta el 16 de julio de 2003. La apelada explicó que debía reincorporarse a trabajar un jueves, y poco antes de que culminara una quincena, por lo cual le pidió a Álvarez Moore que si le permitía comenzar el siguiente lunes. Adujo que de ese modo evitaba a la empresa tener que hacer ajustes al cheque que se le pagara. [10]
Declaró también que cuando logró reunirse con Álvarez Moore, ésta tenía una carta en sus manos y le preguntó a la apelada si “iba a seguir con eso”. Finalmente, le instruyó a la apelada que no se presentara a trabajar hasta que la llamara. Álvarez Moore nunca llamó a la apelada y dejó de contestarle las llamadas. Por ello, la apelada se presentó a la oficina nuevamente. [11]
En esa ocasión, Álvarez Moore llevó a la apelada a una oficina contigua y estaba acompañada por su hijo. Entonces, le enseñó un recibo y le preguntó que qué era eso. La apelada le contestó que ella bien sabía lo que era ese papel, lo cual, negó Álvarez Moore y la despidió. [12] El despido se concretó el 17 de julio de 2003.
Según se comentó durante el juicio, el recibo lo llenó la apelada y se le entregó a un cliente para acreditar un pago por servicios ofrecidos. Se indicó, y de hecho así lo reconoció la apelada, que el recibo no era uno de ciertas libretas de recibos que Álvarez Moore mandaba a imprimir. De hecho, la apelada reconoció que firmó más recibos como ese. [13] Declaró que por instrucciones de Álvarez Moore, ellas debían utilizar, de ordinario, las libretas de recibos impresas. Pero, en caso de que se acabaran o llegara el ex esposo de Álvarez Moore, las instrucciones eran que no llenaran los recibos oficiales y que acreditaran los pagos en documentos no oficiales. De acuerdo a las declaraciones de la apelada y de la Leda. Ramos, se hacía lo anterior para que el ex esposo de Álvarez Moore no tuviera constancia cierta del dinero que se producía en la oficina.
De hecho, también se declaró que no había caja fuerte o registradora, ni sistema computarizado de facturación en esa oficina. El dinero que se cobraba, se escondía en gavetas, e inclusive, detrás o debajo de piezas de las computadoras (por ejemplo, debajo del teclado o bajo la torre). Posteriormente, Álvarez Moore lo *780 recolectaba. [14]
Como bien indicó el TPI, Álvarez Moore comentó y reiteró que la única razón para el despido de la apelada fue el que aquélla llenara el recibo no oficial. [15] Sugirió que con ello, perdió la confianza de la apelada como empleada, pues pudo haber presentado muchos más de esos recibos. Ahora bien, se le confrontó con las expresiones de la apelada, a los efectos de que siempre aseguró que con probabilidad había llenado ese y otros recibos más de esa índole. [16] También, que la apelada explicó siempre las razones por las que se entregaba ese tipo de recibo a los clientes.
Álvarez Moore no refutó las declaraciones de la apelada. Además, que aun cuando alegó que el dinero al que refería el recibo nunca entró a las arcas de la empresa apelante, no presentó evidencia acreditativa sobre el particular. Aunque afirmó que la empresa llevaba un cuadre de los recibos que acreditaba, alegadamente, la entrada de los ingresos que se generaba, aun en la etapa del juicio, esa evidencia no se había presentado. En resumen, Álvarez Moore no pudo dar constancia de que el dinero al que aludía el recibo en controversia no lo hubiera recibido la empresa apelante. [17]
Valga indicar, además, que de acuerdo a la prueba documental, junto con las declaraciones aportadas por Álvarez Moore, surgió lo siguiente. A Álvarez Moore le llegó una carta de 9 de julio de 2003 con el resultado de la investigación de la querella que inició la apelada ante el Departamento del Trabajo. La carta incluyó la determinación de dicha agencia frente a la reclamación de la apelada del pago de vacaciones acumuladas. Álvarez Moore reconoció que el resultado de la investigación fue que la apelada era una obrera que se desempeñaba como oficinista. También, adujo que la agencia determinó que la apelada tenía derecho al pago de $2,520 por concepto de vacaciones. [18]
También se trajo a colación, que la apelante presentó una declaración jurada de 14 de julio de 2003, 3 días antes del despido de la apelada. En dicha documento, un alegado cliente suyo hizo constar que había sido a quien se le entregó el recibo objeto del despido de la apelada. Sobre la declaración jurada, surgió que el cliente indicó que fue el 4 de octubre 2002 que se presentó a las oficinas de la apelante, que la apelada recibió el pago y que le entregó el recibo en cuestión. Ahora bien, Álvarez Moore reconoció que el recibo tenía fecha de mayo, más aún, comentó que la fecha a la que aludía la declaración jurada estaba incorrecta. [19]
También surgió durante el juicio, que el 15 de julio de 2003, apenas dos días antes del despido, el representante legal de la empresa apelante envió una carta al Departamento del Trabajo mostrando la inconformidad de la apelante con la determinación que emitió dicha agencia en tomo a la querella de la apelada. Con su carta fue que presentó la versión de que el despido estuvo motivado por lo del recibo no oficial, contención que pretendió apoyar con la referida declaración jurada. La posición que expresaron en la carta es que la empresa apelante no tenía la obligación de pagarle vacaciones a la apelada. [20] Basándose en lo antes discutido, entre prueba adicional testifical y documental que se presentó, el TPI adujo que le merecía crédito la contención de la apelada. Estimó que la razón que ofreció la apelante no era justa causa para el despido. Se destacó que la apelada reconoció la actuación que se le imputó, y además, explicó de manera satisfactoria porqué llenó el recibo en cuestión. El TPI indicó que la apelante falló en presentar prueba que lograra refutar las declaraciones de la apelada. Estamos de acuerdo. Todos los incidentes relacionados al recibo, sostienen la determinación de despido injustificado.
La Ley de Despido Injustificado confiere a todo empleado contratado sin tiempo determinado, que fuere despedido sin justa causa, el derecho a recibir de su patrono, además del sueldo que hubiera devengado, una indemnización correspondiente de uno (1) a tres (3) meses de sueldo, dependiendo del número de años de servicio del empleado y una indemnización progresiva adicional equivalente a una semana de sueldo por cada año de servicio. Díaz Fontánez v. Wyndham Hotel Corp., 155 D.P.R. 364 (2001); Irizarry v. J. & J. Cons. Prods. Co., 150 D.P.R. 155 (2000).
*781 La política pública del Estado es la de proteger al trabajador en su empleo y desalentar el despido injustificado y caprichoso. Soc de Gan. v. Vélez & Asoc., 145 D.P.R. 508 (1998). Por ello, la citada ley establece una presunción de que el despido del empleado fue injustificado, y le corresponde al patrono rebatir dicha presunción mediante preponderancia de la evidencia. Rivera Torres v. Pan Pepín, 161 D.P.R. 681 (2004); Díaz Fontánez v. Wyndham Hotel Corp., supra; Belk v. Martínez, 146 D.P.R. 215, 230-231 (1998); Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 650 (1994); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 303-304 (1994).
A tono con lo anterior, el Artículo 2 de la citada ley, 29 L.P.R.A. § 185b, dispone que para despedir al empleado sin que éste tenga derecho a la indemnización, el patrono tiene que demostrar que tal despido fue justificado. A esos efectos, conviene apuntar que se entenderá por justa causa para el despido lo siguiente:
“(a) Que el obrero siga un patrón de conducta impropia o desordenada.
(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.
(d) Cierre total, temporero o parcial de las operaciones del establecimiento.
(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento, y los cambios en los servicios rendidos al público.
(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas o que prevalecen al ocurrir el despido.”
No se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento.
En este caso, la empresa apelante falló en rebatir la presunción de que el despido fue injustificado. Su prueba no acreditó la concurrencia de alguno de los supuestos que la ley reconoce para justificar un despido. La razón que aportó para despedir a la apelada y las gestiones que hizo para pretender darle formalidad a la justificación que esgrimió, ello, sólo días antes en que efectuó el despido, apuntan a que su determinación fue caprichosa y desvinculada a patrón de conducta indebida alguna de la apelada, y menos, que basó su determinación en pro del buen funcionamiento de su empresa.
C
Por otro lado, las expresiones y actuaciones de la apelante, mediante Álvarez Moore, durante el embarazo de la apelada, y cuando aquélla pretendía reincorporarse al trabajo cerca de la fecha en que extinguiría su licencia de maternidad, abona a la determinación de que medió un despido injustificado. Otra disposición que prohíbe el despido sin justa causa es la Ley de Madres Obreras. Esta legislación dispone que toda obrera en estado grávido de embarazo tendrá derecho a un descanso que comprenderá cuatro (4) semanas antes del alumbramiento y cuatro (4) después. 29 L.P.R.A. §467. El patrono está obligado a reservar el empleo a la obrera embarazada durante el período de descanso para cuando regrese luego del alumbramiento. 29 L.P.R.A. §468.
*782 La referida legislación establece que el patrono no podrá, sin justa causa, despedir a la mujer embarazada. 29 L.P.R.A. §469. Advierte que el patrono que despida, suspenda, reduzca el salario, o discrimine en cualquier forma contra una trabajadora por razón de la merma en su producción mientras ésta se encuentra en estado de embarazo, o rehúse restituirla en su trabajo luego del alumbramiento, incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños causados a la trabajadora. Id. También, el patrono podrá estar sujeto a la imposición de una multa. Además, se podrá conceder como remedio a la obrera, que se le reponga en su trabajo so pena de incurrir el patrono en daños adicionales.
En este caso, constaron para récord, y le mereció credibilidad al juez, las expresiones y actuaciones que originó Álvarez Moore contra la apelada mientras estaba embarazada. Conforme a las definiciones de la ley antes discutidas, tales expresiones y actuaciones pueden tenerse por discriminatorias. Añadimos que es cierto que la apelante no despidió a la apelada mientras estaba embarazada, y además, que podría concluirse que le reservó su empleo. Ahora bien, no por ello se escapa del alcance de la Ley de Madres Obreras.
La razón que pretendió zurcir la apelante para despedir a la apelada, mediante declaraciones y documentos con información contradictoria, fue injustificada y sirvió como un mero subterfugio para darle visos de legalidad al despido. A fin de cuentas, sin ofrecer justa causa para ello, el despido resultó en la negación a la apelada de la restitución de su empleo, a lo cual tenía derecho tan pronto regresara de su período de descanso post alumbramiento. Esta actuación está proscrita por la ley y amerita, en cuanto a la apelante, la imposición de responsabilidad civil y las sanciones para las que provee la ley. En cuanto a la apelada, procede la concesión de remedios para reparar los daños que sufrió más la reposición de su empleo. El TPI proveyó para lo anterior y avalamos su determinación.
D
La Ley de Represalias dispone que:
“a) Ningún patrono podrá despedir, amenazar, o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.
b) Cualquier persona que alegue una violación a las sees. 194 et seq de este título podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió la violación y solicitar que le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de dichas secciones.
c) El empleado deberá probar la violación mediante evidencia directa o circunstancial. El empleado podrá, además, establecer un caso prima facie de violación a la ley probando que participó en una actividad protegida por las sees. 194 et seq de este título y que fue subsiguientemente despedido, amenazado, o discriminado en su contra de su empleo. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido.” 29 L.P.R.A. §194a.
Para prevalecer en una causa de acción de represalia, el empleado debe demostrar con evidencia directa o circunstancial que participó en una actividad protegida; y que fue subsiguientemente despedido, amenazado o discriminado. Marín v. Fastening Systems, Inc., 142 D.P.R. 499, 511 (1997). Con lo anterior, el obrero cumple con establecer un caso prima facie de represalia, lo cual obliga posteriormente al patrono a alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Aun cuando el patrono presente prueba sobre el particular, el obrero puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el *783 despido discriminatorio. Id.
En este caso, la apelada declaró que ante la negativa de Álvarez Moore en reconocerle la acumulación de vacaciones, tuvo que acudir al Departamento del Trabajo. Con la información que ofreció la apelada, dicho foro inició una investigación, y de hecho, emitió una determinación favorable para la apelada. Dicho ente determinó que la apelada tenía derecho a disfrutar de licencia de vacaciones o al pago del período de vacaciones que hubiera acumulado.
La apelada presentó prueba testifical sobre las expresiones y situaciones que experimentó con Álvarez Moore, después de haber presentado su querella ante el Departamento del Trabajo. Mediaron amenazas de la posibilidad de perder su empleo y se le cuestionó de porqué continuaba con el proceso. Al final, apenas días después de conocer el resultado de la investigación y la determinación de la agencia, se le despidió.
Estimamos que la prueba claramente apunta a que la apelada estableció un caso prima facie de represalia. Llevó a cabo una actividad protegida por la ley al procurar vindicar los derechos que, finalmente, se determinó que tenía. Ofreció información de su patrono que sirvió para tramitar su querella. Durante el proceso lidió con instancias de amenaza y discrimen hasta que fue despedida. Entonces, presentó su reclamación ante el TPI tal y como le permite la ley.
Por su parte, la empresa apelante y Álvarez Moore no pudieron satisfactoriamente rebatir la presunción que recayó sobre ellos una vez establecido el caso prima facie de represalia y discrimen. Aunque esgrimieron una razón para justificar el despido de la apelada, la prueba que aportaron para acreditar los méritos de su contención, no le mereció crédito al juzgador. Luego de analizar la transcripción de la prueba oral, avalamos el dictamen del TPI. Nos negamos a sustituir por nuestro propio criterio, las determinaciones que esbozó el foro apelado basándose en la prueba desfilada. No encontramos visos de pasión, prejuicio, parcialidad, error manifiesto o arbitrariedad en la apreciación de la prueba.
E
En este caso, se probó a la saciedad el hecho básico de que el despido de la apelada fue injustificado. Tal actuación, como bien concluyó el TPI, incidió sobre disposiciones de distintas legislaciones laborales. Entre las leyes aplicables, concurrieron en este caso la Ley de Despido Injustificado y la Ley de Madres Obreras. Ambas piezas legislativas proveen un marco reparador para el obrero que las invoca. Ahora bien, de acuerdo a la jurisprudencia, aun cuando las actuaciones del patrono resulten en la violación de una y otra, no se puede conceder a favor del empleado los remedios que proveen ambas.
Sobre el particular, se determinó que el conceder una indemnización bajo las dos leyes en cuestión penalizaría al patrono por un mismo acto -el despido injustificado. En estos casos, el TPI debe conceder el remedio que proceda bajo una u otra ley, a base de lo que sea más beneficioso para la trabajadora, según la prueba, pero la concesión de indemnización bajo la Ley de Madres Obreras, excluirá la concesión de indemnización bajo la Ley de Despido Injustificado, y lo mismo ocurrirá a la inversa. Soc. de Gananciales v. Centro Gráfico, 144 D.P.R. 952, 965(1998).
No obstante, en vista del hecho probado del despido injustificado, el TPI proveyó remedios a la apelada al amparo de la Ley de Despido Injustificado, la Ley de Madres Obreras y la Ley de Represalias. Advertimos que resulta más beneficioso para la apelada que conserve los remedios concedidos al amparo de las últimas dos legislaciones. Siendo ello así, conviene reducir del importe global de la indemnización computada la partida de la mesada. Además, habrá que ajustarse el cómputo de los honorarios de abogado. Lo anterior, en vista de que el TPI tomó en cuenta la mesada para computar dicha partida.
Disponemos, además, que la apelante falló en ponemos en condiciones de determinar que las partidas *784 computadas por el TPI fueran exageradamente altas. Tomamos cuenta de que los remedios concedidos se calculan, principalmente, en cómputos matemáticos cuyas fórmulas proveen las leyes aplicables. No se nos detalló en qué consistieron las fallas de los cómputos que realizó el TPI. Tampoco se explicó porqué la valoración de los daños que hizo el TPI fuera inadecuada y que ello resultara en la concesión de daños excesivos.
En tomo a lo anterior, conviene destacar que la gestión judicial de estimación y valoración de daños es una difícil y angustiosa, al no existir un sistema mecánico que permita llegar a un resultado exacto con el cual todas las partes queden satisfechas y complacidas. Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe, 146 D.P.R. 267 (1998); Rodríguez Cancel v. E.L.A., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975). En relación con esta difícil y angustiosa labor, se ha reconocido que, de ordinario, los tribunales de primera instancia están en una mejor posición que los tribunales apelativos para evaluar la situación. Ello, por cuanto éstos son los que tienen contacto directo con la pmeba que a esos efectos presenta la parte que los reclama. Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe, supra; Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Por ello, se promueve la norma de abstención judicial. Esto es, los tribunales apelativos no intervendrán con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Blas Toledo v. Hospital Nuestra Sra. de la Guadalupe, supra; Valdejuli Rodríguez v. A.A.A., 99 D.P.R. 917 (1971), Urrutia v. A.A.A., supra.
n
En mérito de lo anterior, modificamos el dictamen apelado. Destacamos que sólo se cometió el sexto señalamiento de error.
En principio, el TPI podía determinar que las actuaciones de la apelante violaban la Ley de Despido Injustificado, con ello aseguranda la apelada su derecho a recibir el remedio de la mesada. No obstante, en vista de que tales actos también permitían la concesión de remedio bajo la Ley de Madres Obreras, no podía proveerse para la concesión de remedios bajo ambas piezas legislativas. Como bien indica la jurisprudencia, resultaría el asunto en una doble compensación.
Por tal razón, atendemos el reclamo de la apelante, el cual se limitó a solicitar el ajuste de la cuantía principal que fijó el TPI como remedio a favor de la apelada, excluyendo del cómputo los honorarios de abogado, partida que no fue cuestionada por las partes involucradas en el pleito. A estos efectos, disponemos que aunque era razonable el pago de los $17,777 que fijó el TPI, la apelada recibirá $15,544 como indemnización. Esta partida refleja el ajuste por descuento de los $2,233 calculados como mesada. Se confirma sobre los demás extremos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 22

. Transcripción de la Prueba Oral, vista de 5 de septiembre de 2008, pág342.

. Id., páginas 44-45, 47.

. Id., páginas 76-85.

. Id., páginas 35-36.

. Transcripción de la Prueba Oral, vista de 4 de septiembre de 2008, pág. 42.

. Id., págs. 45-46.

. Id., pág. 46.

. Id., pág. 51.

. Id., pág. 49.

. Id., pág. 53.

. Id.

. Id., páginas 35,54.

. Id., pág. 34.

. Id., páginas 28-31, 33-36.

. Transcripción de la Prueba Oral, vista del 5 de septiembre de 2008, pág. 70.

. Id., páginas 109-110.

. Id., páginas 111-113.

. Id., páginas 103-104, 106.

. Id., páginas 108-109.

. Id., pág. 106.